Looks like y'all are ready, so we are too. We'll go to 23-11095, MidTexas Industrial Properties v. U.S. Polyco, and we'll begin with David Johnson. May it please the Court, Mr. Peck. Good morning, Your Honors. This is an interesting case, at least it is to me, because it deals with an issue of when does a statute of limitations accrue for a trespass or nuisance claim when the defendant originally took possession of the property with a right to be there. It's kind of a holdover case. And so in that circumstance, Texas law says that statute of limitations does not accrue because the plaintiff doesn't And maybe this is the wrong question, but I just don't understand why y'all haven't resolved this. This stuff sitting there all that time, it's not helping them and not helping you, and I just don't understand why it just hasn't gone. That's a great question. And they've said that they terminated the underlying contracts in 2016, and today the property is still there. Why didn't y'all just, can't y'all just remove it and put it out? And then y'all don't let them in when they wanted to come in, they weren't allowed in, and so they couldn't get it. I mean, I'm just not, to me, this case just doesn't make, like, personal sense. Because why would y'all not just get this stuff out? It's not helping either side. And that is a great question, because it leads to the result of the trial court's disposition in this case, which is that they have the right to keep it there as long as they want without compensation to us, and we don't have a right to remove it. They're saying they still own it. They say they haven't abandoned it. So it's not our problem. But how is it helping them? How is it helping them? I don't know. We have conjecture that it's collateral for a loan, and if they removed it, it may impact their loan. That's just conjecture. There's no evidence in the record to say that. There's no evidence in the record to justify why they haven't removed it. The problem we have is that we have, this is a secured property. This is not, there's fences up, barbed wire up. There are millions and millions of dollars of cars that are sitting out there that are right by this seven-acre location at this point. And so there has to be a very highly coordinated effort to be able to get the security issues solved to get them to remove it. We have tried to communicate with them. We have exchanged drafts of an agreement that would alleviate these issues, and they haven't responded to it. They have never, I think the last attempt of doing that was in, it was October of 2019 when we sent a letter and we attached the last draft of this removal agreement. And they've never responded since then to this removal agreement. They say we, they say they want to take it, but they won't respond to us in responding how we can effectuate that. So how do y'all have standing given that you don't own the property and you weren't the lessee at the time that they first ran away, if you want to call it that. So we have standing because we have the exclusive right to possess the surface. And that has been the case since 2017. The evidence in this case clearly shows that the defendant had the consent, gratuitous consent to be on the property after the contract terminated until September of 2019. At that point, my client sent them a letter. That was the first time that any communication No, I'm aware of your issue on statute of limitations, but what I'm saying is by the time y'all showed up, they were already leaving that there without doing what, you know, it was already an issue. I mean, I'm not saying you can or cannot consent. I'm just saying it was already an issue and you don't own the land. So how do you have standing? You don't have to own the land to have a trespass claim. If you have the exclusive right to possess the land as a lessee would, you have standing if you have Right, but there was already a trespass. No, that's where we disagree. There was not a trespass until we were the landowner. The equipment. The uncontradicted evidence shows that TCB, the prior lessee, never told them to remove the equipment. That is out of their own representative's mouth. That is what has been pled in this case by them. And so the first time anyone told them to leave was when my client told them to leave in September of 2019. That is when a trespass began. Because why is that? One of the fundamental elements of a trespass claim is that there's entry onto the property of another without the property owner's consent or authorization. That is an element of the claim. We could not have sued them before September of 2019 because they had never been told to leave. They had consent. You agree that under Texas law there is no requirement to tell someone to leave before a trespass claim accrues. Let's take out the wrinkle of ownership and who owns what at what point. If you come onto my land and my house and I'm not home and my security cameras for whatever reason don't catch it, you've trespassed on my land, right? I never gave you permission to do it and I never told you to leave, but you absolutely trespassed under every law of the United States, right? There's two different types. Under your scenario, that is correct. That's not the scenario here. Well, if you came onto my land and built a house, you would also be trespassing regardless of whether I ever came and said, like, please don't pour a slab and build a house there, right? I mean, the without consent means that, like, obviously you have a defense to trespass if you say, well, actually I had permission, right? That makes perfect sense. But that doesn't mean that until I come up and say, wait a second, wait a second, why are you building a house on my land? There's no trespass. So once again, there's two different types of scenarios. I agree with you. The normal scenario is I'm just a landowner and some third party just comes in without me knowing about it and does something to my property. That is not this case. This case is we had a prior lessee had a contract with them. They had a license to come out and put this stuff on. Everybody agrees when they put their stuff in the property, they had the legal right to do that. So the issue is after that. And that ended, I thought, in 2015. That's what they say. I mean, that's understood that in 2015 that ended. And that's before you all came out in 2016, right? So in 2016, they terminated the contracts that allowed them to have a transloading operation out there, okay? But no one, but they stipulate, they have said that the property owner at that time never told them they had to remove their material. And so under Texas law, a person who remains after his or her right to possession terminates and demand is made for the person's removal becomes a trespasser. And that gets to your point. If you say, yes, come into my house, whoever you are, and they do that, they're not a trespasser. As soon as I get home and I realize, oh, well, you've got some friends or you're doing something I don't like, and I say leave, and they don't, they're a trespasser. What your opponent says is TCB locked USP out of the premises once the state court litigation began in 2015. That's their argument at page 16 of the red brief. Okay. That doesn't mean that they're a trespasser. That means they can't come in and use their equipment. Remember, this is a secured location. There's two different issues. There's the right under the transloading agreement to have operations, to go out there and make asphalt, okay? And so at that point, they were not allowed to come onto the property to make asphalt. But there's a different issue of are you a trespasser by having your equipment, on the property? And there is no evidence that they were ever told to remove their property. So there's a difference between being locked out to access your property until we can negotiate you entering to remove it versus your equipment being there and being a trespass. And all we have to do, I mean, if there's any question about consent is look at their own answer. It is replete. And we cited two or three times in our response to the summary judgment motion the fact that they have stipulated in paragraph 13 of their amended answer. Plaintiff continued to consent to the presence of the equipment even after it was clear the removal was not likely to occur. But they're also arguing that when you came in, you knew that stuff was there. So even if you don't like it, it's there. And so even if they were or were not a trespasser, it is what it is and you're stuck with it. That's another argument that they're making. So, you know, y'all came in knowing they were there, whether you consent or not. Why are you then the one withstanding? That's different from if they had come running in after you were there. And that gets to implied consent. The fact that we took over this property and knew that the equipment was there. Implied consent means that you can consent to something without by your conduct. Right? And that's Texas law says that we I'm just saying that this is so it's like the property that has 20 trees and you didn't want 20 trees, but that is the property. I mean, you're basically saying that the owner of the property allowed them to stay. Well, if that's your argument, then they're still allowed to stay whether you like it or not. That's what they're arguing. So you either lack standing because they were already trespassers or because they were already the 20 trees. We disagree with that. What's your best case for your viewpoint on standing? On that second point that if they're not trespassers, it's them. They get that. I'm calling it the 20 trees. They get that seven acres. See, they never pled and never got an adverse possession claim, which they have no property right out there. So the standing claim is inherently wrapped up into our statute of limitations argument, which is that to have standing, a property owner has to have an has to have a claim accrue whether they own the property or have a right to possess the property. And that's what we're saying is we didn't have that claim until 2019, and that's we were the right person to have possession of the property. Okay, but... And then once I have... I don't mean to keep repeating it, but the point is it is what it is. So the owner of the property, for example, decides to have 20 trees and then you lease the property. You can't just throw out the 20 trees. And if the owner of the property did not try to throw out this material on the seven acres and y'all knew it was there when you came, then how do you have standing to throw it out? Under... There was no argument made on that issue that I recall. Standing is still a jurisdictional issue. No, but see, the point... Well, the point being we had the exclusive right to possess that property. We had the right to throw them out. Just because the original landowner, the Texas Trust that leases the property to TCB and leased it to us didn't throw them out doesn't mean that we as the new party that owns the lease cannot come in and cut down those 20 trees or have them removed or tell them to take out their equipment. Well, I don't think there's any debate about that, right? I thought the whole point was who has to pay for it, right? I mean, I'm looking at the lease that you signed, and it says that you have leased lessee represents that the premises and all subsurface conditions have been examined by lessee and lessee agrees to accept the same as is without recourse to lessor. So you, in the lease, you say I'm taking it with, you know, for Judge Haynes' hypothetical, the 20 trees, or in this case, you've said you're taking it with the warehouse and the concrete slabs and all the stuff that's there. So that's what I'm trying to understand how it is that you can get around the terms that you took the lease under the, as it was. Obviously, if you want to make changes to it, you know, your lease may have limitations on what you can do. And who knows about the possessory rights of this stuff that's there that's not affixed to the land. But I mean, it's your land. You can do what you want, but you'd have to pay for it, right? Isn't that the dispute or no? This is personal property. I'm thinking more about the buildings. Well, that's still, this is still chattel. This is not permanent. But the buildings aren't chattel. Yes. I mean, maybe I'm misunderstanding the pictures. Can you tell me about the, because I'm looking at the pictures in the record and it does look like buildings to me. Well, they're very stable. And they're very stable. But in this litigation and the other litigation we've had, there hasn't been any issue with the fact that these are removable equipment that they have. And so the issue in the lease is we take it as is from their prior owner. This isn't the prior owner's property. We're not saying we're accepting the prior, this isn't Texas Trust's large equipment that's on our property. It is Polyco's. And we never agreed that we were going to accept that. The lease would say we have no right to sue Texas Trust over their chattel. It doesn't say that we can't sue them when we demand they take their chattel away and remove it. And that's the point, is that's exactly what we did. We had the right to ban that they leave, take it out in the fall of 2019. We did that. They said no. That's when the, that's when our claim accrued. That's when we had a trespass claim. What is your best case site on this point? It's in, first our brief, it's on, it's Williams v. Garnett, 608 Southwest 2nd, 794. That's in our brief. There's also a newer case, O'Kane v. Coleman, 2008, Texaplexus 4908. And I would also cite to trespass to chattel cases in Texas, like a conversion claim. That specifically says that the statute of limitations does not begin until the plaintiff demands for possession and it is refused. And that is the Southwestern Bell v. Commercial Metals case 389 Southwest 2nd, 116. And a newer case, Morris v. Enron, 948 Southwest 2nd, 858. That's the precedent that says thank you. I'll be back in a minute. All right. Well, now I hear from Michael Peck for Pollack. May it please the court, counsel, and your honors. Judge Haynes, I'd like to start with the question that you started with, you started this whole process with, and that was this issue of why is this property still there? Why isn't it gone? Counsel argued in the record and I'll try to answer the question in the spirit it was asked, I think. The fact of the matter is, and counsel knows this, my client's been trying since last October after to obtain financing to get this out. As the record reflects, they've been charging us storage charges since 2019. These storage charges abruptly stopped earlier this year and after contractors had been there to look at the project and to put a timeline on it, we were told that perhaps now we're going to consider this abandoned and we might take a different tact on this. So I will just say my client stands ready. They have the financing in place and they're ready to remove the property. I should let you remove it. I mean, now that you all are here together, maybe as you walk out to a nice restaurant for lunch, can you all talk about this and get it done? I mean, regardless of how we rule on the case, it just seems to me everybody wants these out, so take them out. Your Honor, I agree completely. I mean, in my client's defense, I will say, as this court knows from the record, my client had a lawsuit with Texas Central Business Lines. Texas Central Business Lines is a company that they have a good relationship with. We won at the trial court. We won a judgment in excess of $9 million that was supposed to help provide us money to get that off. They appealed it to Waco. We won at the Supreme Court recently, at the Texas Supreme Court on a contract interpretation issue. We're back in Waco again, so we're trying, we're running two lines of attacks on this. And I will say, I think it's important for the court to understand, my client and Mid-Texas are strangers. My client was never an invitee of Mid-Texas. It was never a licensee of Mid-Texas. Mid-Texas has injected itself into my client's life twice. Mid-Texas, during our litigation with TCB, or Texas Central Business Lines, Mid-Texas for some reason purchased a guarantee that it then sued us for, and we had to fight that in federal court, and we won that in federal court. There was no rhyme or reason why they did that. Then the second time they injected themselves into our lives was when they took on the premises in this case. And I would just point out to the court, my client got a verdict against Texas Central Business Lines in September of 2017. Within two weeks, Texas Central Business Lines had let that lease lapse, and Mid-Texas had moved in to take on this lease, which ultimately now is why we're here, because they're suing us for trespass. And you have clearly said you think they lack standing. I'm not misunderstanding that, am I? No, no, Your Honor. That is correct. And so, and that's jurisdictional. The lack of standing is jurisdictional, so that's why I was addressing that with your opponent. Am I misunderstanding your argument? No, Your Honor. It is clear. Can you be clear on why, really on both sides, whether there was a trespass or whether there wasn't at the time, why is there no standing? So Your Honor, I think the other side is kind of trying to scramble this lessee and owner and who had what rights, etc. So I'll step back a second and just say my client had no rights to be on the property but for a license that was part of an agreement. It was called the Transload Agreement, and it had a provision in there called permitted use. Because this was a free trade zone, there were certain regulations. My client had to have removable property there. And that license is what gave them the right to be there, and the document clearly says that when that license terminates, the authority to be on the property terminates as well. So my client built this property and then got in a fight with Texas Central Business Lines, and at that point in time, the agreement was terminated. So at that point, my client had no further authorization to be on the premises, and they were locked out by Texas Central Business Lines. They spent $9 million on the plant. It's never operated one day. So the law in Texas is when the actionable injury occurs, it is the person that has the possessory interest, whether it be the owner or the lessee of that property, who has that claim. And then the standing issue is, does a subsequent owner or a subsequent lessee have a claim? The answer is no, unless they obtain an assignment of that claim from the party that was actually injured. And in this case, that did not take place. They could have bargained for an assignment from Texas Central Business Lines. And I'd point out that the law of Texas is pretty clear on that, Judge. There's some complaints about this being a harsh result. And what the courts have said, what the Texas Supreme Court has said is that it's not a harsh result to invoke a standing issue in these sorts of cases because the party that's coming to the situation has the ability to do multiple things. And what the courts have said, the parties have the ability to walk away from the deal, the parties have the ability to make a better deal, or the parties have ability to require that it be removed before they come on. And I would point out factually, MidTexas has admitted that in this case, because if you look at the amendment to the ground lease, Judge Oldham, you were talking earlier about the terms of the lease. The amendment to the ground lease has a specific provision under schedule of rents, and one of the record entries is page 704. The schedule of rents that they negotiated applies specifically to this piece of property, and it says that they don't owe any rent on this piece of property unless they are able to store cars there. So in other words, they're not harmed. The injury, this is another issue in the standing issue, that you question whether the injury is different for the two parties, the one that was in possession and the one who is in later possession. And the injury is precisely the same. The injury is that those premises can't be used as long as our plant's there. I mean, I guess they could take possession of the plant and use the plant, but if our plant's there, they can't put something else there, be it Texas Central Business Lines or MidTexas. And so the injury is the same, and therefore, they had to have an assignment of that claim to have standing. And I believe, as the courts have said, that they were in a position to realize that, and they acknowledged that that injury existed by negotiating a positive rent term for themselves. Essentially, they took on more property without paying additional amounts of money. So if someday our property wasn't there, they would have possession of it and be able to use it. But they were not harmed in the meantime because they had negotiated in light of this injury that existed at the time. So that's my answer on standing, Judge. I don't believe that there is standing in this case because Texas Central Business Lines was the, had the possessory interest at the time the authorization ended when the license ended. The court obviously went a different route and decided this on limitations. And that brings up this issue of consent. It's odd because we're kind of in a mirror. Usually when consent is contested, it's when the other side, a party like mine, is saying that they have consent to be out there and no trespasses occurred. In this case, consent is kind of being flipped on its head and being used against us on this limitations argument. But the one thing I wanted to say on that is it is clear that the evidence, the competent evidence that was presented in this case on summary judgment grounds all shows that my client never had consent or authorization from MidTexas to be on that property. And that is because, again, I'll go back to the fact that the only thing, the only time my client ever had authority to be out there was when that license was in place. And when that license terminated, my client did not have authority to be out there anymore. So when MidTexas took the property, my client did not have a license and was not an invitee of that company. So essentially for the purposes of this case, when, if you view this case as MidTexas actually having a separate entry apart from Texas Central Business Lines, their possessory interest was affected immediately on October 1, 2017 at the time that they took possession of the property. So they had an actionable entry at that point, and they needed to bring a cause of action within the applicable statute of limitations. The lower court looked at this a little bit differently, and I think they looked at it this way because, you know, the courts are constrained. They have to get, they have to look at all the evidence in a light most favorable to the non-movement. And so the way that the lower court phrased the issue was the court said, based upon our view of the evidence, we know that any consent or authorization that might have existed had been revoked well before that two-year statute of limitations period ran. And so what I think the court was saying there is, look, they're saying there was consent and authorization and it was revoked at some point in time, and what we're going to do is give them some sort of credit for possibly consenting at some period of time, but clearly more than two years before they filed suit, that consent had been revoked or that authorization had been revoked. I think what the court looked at was the evidence that showed we were locked out, that we couldn't operate our plant, and then finally, judges, what the court looked at and what is pretty dispositive in this case is this evidence from these letters from 2019, primarily the one from October 24, 2019, and I'm not up here just to read to the court, but I would state that letter dated October 24, 2019, there are certain highlights from that letter written by MidTexas' attorney to PolyCo that clearly show PolyCo, I mean, MidTexas never thought that PolyCo had authority to be out there. One sentence, any usage rights and transloading rights for the premises ceased upon termination of the agreements and USP had no further rights in and to the premises. I mean, that's clearly what we've been arguing in this case. Next paragraph, MidTexas has not consented to such extended occupancy of USP's personality on the premises. Later, due to USP's continued and unauthorized use of the premises, MIP demanded by letter appropriate compensation. And then on page two of that report, I know this is getting into the weeds a little bit, but I think this is where the court ultimately focused and determined that at least two years before they filed suit, authority had been revoked. The sentence says, despite such unauthorized use of the premises, USP wanted its insurance company to gain access to the restricted and secure area. That access agreement was sent to USP's insurance agent on August 13, 2019. I'm not trying to play word games, Your Honor, but they say despite such unauthorized use of the premises, they sent an access agreement on August 13, 2019. So if it's being sent despite the continued unauthorized use and it's being sent on August 13, that means the use was unauthorized before or on August 13, and that takes us outside of the two-year statute of limitations because they don't file their suit until September 2021. So at least by a month, they're outside of limitations. Your Honor, they don't have any evidence that they have raised that shows that there's a fact issue on consent. The only thing that they have is they have evidence of acquiescence or sleeping on their rights. It's kind of an odd case, though, in the sense of if there's no standing, there's no standing. That's fine, but y'all's stuff is still there and you don't want it there and they don't want it there. So if you were teaching a law school class, what would you tell the students that should be done to get this situation fixed? Because at the end of the day, as a lawyer, you're trying to help your clients get things done. What would you tell your class? I think the first thing I would do is tell them not to sleep on their rights. And that is, Your Honor, we've cited some cases about tolling agreements in Texas and when limitations are tolled. And, you know, the law of the state of Texas is clear that when somebody's saying, hey, we're going to get this worked out, we'll get it done, we'll get it settled, y'all don't need to worry about it. That doesn't stop limitations from running. Limitation still runs and that's kind of the situation here. And, you know, Judge, not being in their position, perhaps there's some way to go about this through a forcible detainer issue or something like that, another aspect. Certainly they could work with us to get it off the property. That's not a legal remedy. But if I was teaching a law school class, I think what I would have to say is, like I tell a lot of attorneys that I work with, don't assume these things are going to get worked out in the end. Don't assume that a contract you signed that you don't like the terms of isn't going to end up in a dispute. And perhaps maybe even don't lease the premises if you know they're there and they can't get out and they've just gotten out of a big lawsuit. I think, though, that ultimately what my advice would be is act quickly. Otherwise, you may lose your rights in this manner. I'll just address a few more things and then I'll probably get back the rest of my time, Judge. This issue about injunctive relief and whether it can survive limitations, I would say, first of all, I have once again scoured the pleadings in the lower court and the motions and responses. They did not raise that issue until appeal. It is improper for them to raise this issue now that injunctive relief somehow survives the limitations bar to their legal rights. Obviously, we have two cases. If the court doesn't agree that they forfeited that claim, obviously we have cases going in different directions. We have an El Paso case that says it doesn't survive. They have a Houston case that says it does survive. I would say this. It seems pretty clear to me that if you have a legal right that is barred by limitations, you shouldn't have remedies that can still be enforced based upon that. In this court, this court in other cases concerning federal law and other scenarios has determined that if you have the same set of facts and you have a legal right that arises from those facts and an equitable right that arises from those facts, if the legal right is extinguished and no longer valid, then generally the equitable right is also extinguished. Off the top of my head, there's like a concurrent remedies doctrine that is sometimes invoked, things like that. So I believe under the law that this court typically follows the remedy should not survive if the legal right does not survive. And then I think I've said everything I need to say today. And if there's not any other questions, I'll just get back the rest of my time. Okay. Thank you. Thank you. We'll have the rebuttal. Thank you, Your Honor. I'd like to start with one fundamental issue. The common law right to a trespass claim is not the same thing as a contractual right to be on the property. I think what the district court did and some of the questions from the court today are conflating the two. Just because they had originally had a right to be on the property, when that right ended, that does not mean that they were automatically a trespasser. You can have gratuitous consent, which is what happened in this case. There's at least a fact question on that. And so when does the gratuitous consent end? That is when the claim arises. And that's in September of 2019, when we were the ones that had the right to possession. That's why we, MidTexas, has standing in this case. They mentioned this issue of rent in the agreement. The fact that we have a remitter of rent for this property doesn't mean that we still have the right to have net income from having cars on it. They are different measures, are damages. And one of the things that, Judge Haynes, you keep asking, and it's a fair question, is why don't you just get the stuff off, right? And as if implying that the case goes away, we have damages claims. No, I'm well aware of that, but it just seems like, regardless of whether you get something for the past, why do you want the same future? We don't. Okay. And they don't either. So... Maybe it'll get worked out. And like I said, the main issue for us is the security and access, and they've never responded to that. For the first however many years, it was because they couldn't pay for it. Their testimony and depositions, they didn't have the money to remove it. And then now, just about three months ago, they say, oh, we've got money for it, but they never responded to us about how logistically we're going to get it done. So maybe it does get done to remove the property. Maybe in the next few months. Maybe that'll happen. But the case is still pending. We still have damages claims. But it's a very fair point, Your Honor, and I think that, you know, as counsel, we should be very aware of how we can get this fixed. Well, as I said, since y'all are here together, it might be a good time to talk. Well, Mr. Peck and I are both in Fort Worth. We office about three blocks from each other, and we're friends. And so I don't... Well, I'm just not talking to you. There's no reason... Maybe you can talk here. Maybe we can. I didn't look at where y'all were officed. Yeah, no. I didn't know you were that close. Well, actually, our homes are probably about a mile apart, so there's no reason we can't talk. Okay. Even more so, then, y'all should talk. We should. Maybe you find it more fun here. I don't know. Well, one of the issues, and I'll have to mention this, Mr. Peck said that one of the things he would tell his law students is don't sleep on your rights. My client did not sleep on its rights. Its right started in September of 2019 when it told them to get off the property. Five years, if I'm adding right, and y'all still haven't resolved it. So again, I realize we need to resolve the questions in this case. I'm well aware of that, and that isn't exactly it. But it's just not making sense to me, the future. But again, it's fine. If y'all don't want to talk about it anymore, it's fine, because I know we need to rule on standing and injunction and money and all of that. I'm well aware. Right. And so the sleeping on the claim aspect, our claim doesn't accrue until we have some evidence to support each element of our claim. We have to have the ability to go to court and file a non-frivolous lawsuit. When do we have the chance to file a non-frivolous lawsuit? When do we have a claim that they entered our property without our consent? That was in September or fall of 2019. That's when our claim accrued. That's why we have standing. That's why the section of limitations doesn't bar us. And I would also say something that is just incredible to me, is they keep saying these letters prove there was not consent, and that's just not true. The letters are talking about contractual rights, saying you don't have a contractual right. They don't say that we didn't gratuitously give you consent. And even if they said that, that would just be a piece of evidence, and there can be contradictory evidence. Maybe we were wrong. Maybe it was a mistake. Maybe it was a mischaracterization in a letter that we wrote. If there's evidence of consent, either actual or implied consent beforehand, that creates a fact issue for a fact finder. I see my time is up. Thank you for your time today. I appreciate your patience.  Thank you both. We appreciate your arguments.